UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>                Petitioner,<br><br>  v.<br><br>BORIS KUPERMAN,<br><br>                Respondent. | Misc. No. _____ |

PETITION OF THE UNITED STATES
TO ENFORCE CIVIL INVESTIGATIVE DEMAND No. 2023-35

Pursuant to 31 U.S.C. § 3733(j)(1) of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, the United States of America moves for an order to show cause compelling Respondent Boris Kuperman ("Respondent") to comply with Civil Investigative Demand ("CID") No. 2023-35, so that the United States can complete its investigation of whether Respondent violated the False Claims Act by making false statements in applications to obtain Paycheck Protection Program ("PPP") loans and Economic Injury Disaster ("EIDL") loans from the Small Business Administration ("SBA").

The CID seeks documents and testimony central to determining whether Respondent made false statements in applications for PPP and EIDL loans that he submitted on behalf of two businesses that he owns and/or operates: Gore & Kuperman, PLLC and Can Do Ventures, LLC. The United States Attorney's Office for the Eastern District of Virginia served CID No. 2023-35 upon Respondent on December 29, 2023. Since receiving the CID, Respondent has failed to comply with the CID. Specifically, Respondent has failed to respond to any of the document requests in the CID. Moreover, despite several attempts by the United States to schedule

1

testimony, Respondent has failed to provide a date for his testimony. Accordingly, the Court should order Respondent to show cause why he should not fully comply with the CID.

In support of the Petition is a Declaration ("Decl."), Exhibits 1 and 2, and a Memorandum of Law setting forth the grounds for the proposed order to show cause.

## JURISDICTION AND VENUE

1. The United States brings this action pursuant to the False Claims Act, 31 U.S.C. § 3733(j)(1).

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this civil action arises under federal law and is brought by the United States.

3. The Court may exercise personal jurisdiction over Respondent pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Respondent resides in the Eastern District of Virginia.

4. Venue is proper in the Eastern District of Virginia under 31 U.S.C. § 3733(j)(1) because Respondent resides and transacts business in the Eastern District of Virginia.

## THE PARTIES

5. Petitioner is the United States.

6. Respondent resides and transacts business in the Eastern District of Virginia. Specifically, Respondent owns and/or operates two business entities that are located in the Eastern District of Virginia: Gore & Kuperman, PLLC and Can Do Ventures, LLC. Both business entities have the same principal office address on file with the Virginia State Corporation Commission: 10521 Judicial Drive, Suite 204, Fairfax, Virginia 22030.

## THE PAYCHECK PROTECTION PROGRAM

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act authorized forgivable loans to small businesses and self-employed individuals for payroll, mortgage interest,

rent/lease, utilities, and other business-related expenses through the PPP.  *See* CARES Act § 1102, Pub. L. No. 116-136, 134 Stat. 281, 286 (2020).

8. The PPP was administered by the Small Business Administration ("SBA").  *See* 85 Fed. Reg. 20,811 (Apr. 15, 2020).

9. To obtain a PPP loan, qualifying businesses were required to submit an SBA Form 2483 ("PPP Borrower Application Form") signed by an authorized representative of the business.  The PPP Borrower Application Form required the business to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan.

10. The PPP loan amount available to qualifying small businesses was determined by the number of employees employed by the business and the business's average monthly payroll costs.  *See* 15 U.S.C. § 636(a)(36)(E).

11. PPP applicants submitted the PPP Borrower Application Form to lenders (*i.e.,* financial institutions) that were authorized to process applications and supporting documents on the SBA's behalf.  Lenders issued a PPP loan using their own funds, which the SBA fully guaranteed.  *See* 15 U.S.C. § 636(a)(36)(B).

THE ECONOMIC INJURY DISASTER LOAN PROGRAM

12. The Small Business Act authorizes the SBA to provide economic injury disaster loan ("EIDL") relief to eligible small businesses that have suffered a substantial economic injury as a result of a disaster.  *See* 15 U.S.C. § 636(b)(2).

13. The CARES Act deemed the COVID-19 pandemic to be an eligible "disaster" under the Small Business Act and authorized the SBA to provide EIDL relief to small businesses that "suffer[ed] substantial economic injury as a result of the COVID-19 pandemic."  86 Fed. Reg. 50,214, 50,214 (Sept. 8, 2021); *see also* CARES Act, Pub. L. No. 116-123, 134 Stat.

146, 147 (2020) (stating "coronavirus shall be deemed to be a disaster" under the Small Business Act).

14. A small business was eligible for EIDL relief if the business was "unable to meet its obligations as they mature or to pay its ordinary and necessary operating expenses." 13 C.F.R. § 123.300(a)(1).

## RESPONDENT'S PPP AND EIDL APPLICATIONS

15. Respondent submitted PPP loan applications and PPP forgiveness applications for two business entities that he owns and/or operates: Gore & Kuperman, PLLC ("Gore & Kuperman") and Can Do Ventures, LLC ("Can Do Ventures").

16. Respondent also submitted EIDL applications for Gore & Kuperman and Can Do Ventures.

17. The sections below describe both entities' PPP and EIDL applications.

## GORE & KUPERMAN'S PPP LOAN APPLICATIONS

18. On April 6, 2020, Respondent applied for a PPP loan for Gore & Kuperman.

19. In the PPP loan application he submitted, Respondent claimed Gore & Kuperman had eight (8) employees in 2019 and payroll sufficient to support a PPP loan of $83,168.00.

20. On May 1, 2020, Gore & Kuperman's PPP loan application was approved for a PPP loan of $83,100.

21. On November 1, 2021, Respondent applied for forgiveness of the entire PPP loan amount of $83,100.

22. On January 3, 2022, the SBA forgave only $49,958.33 of the loan principal along with $843.74 in interest.

23. On February 10, 2021, Respondent applied for a second-draw PPP loan for Gore & Kuperman.[1]

24. In the second-draw PPP loan application he submitted, Respondent claimed Gore & Kuperman had eighteen (18) employees and payroll sufficient to support a PPP loan of $182,702.[2]

25. On February 17, 2021, Gore & Kuperman's PPP loan application was approved for a PPP loan of $182,702.

26. On July 20, 2023, Respondent applied for forgiveness of the entire PPP loan amount of $182,702, in which he claimed Gore & Kuperman had ten (10) employees.

27. On October 25, 2023, Respondent received a notice that the SBA had denied Gore & Kuperman's PPP forgiveness application because, among other things, Gore & Kuperman's documentation had material discrepancies and the documentation provided was insufficient to determine if the PPP loan was eligible, was calculated correctly, and/or whether forgiveness is supported.

28. On November 3, 2023, Respondent appealed the SBA's denial of PPP forgiveness to the SBA's Office of Hearing and Appeals.

---

[1] On December 27, 2020, the President signed the 2021 Consolidated Appropriations Act, which allowed entities that had already received a first-draw PPP loan to apply for a second-draw PPP loan, as long as the entity could demonstrate that its gross receipts declined at least 25 percent in any quarter of 2020 relative to the same quarter in 2019.  *See* Consolidated Appropriations Act, § 311, Pub. L. No. 116-260, 134 Stat. 1182, 2001 (2020).

[2] The PPP loan application and supporting documents did not specify whether Respondent's claimed employee headcount was from the 2019 tax year or 2020 tax year.

## GORE & KUPERMAN'S EIDL LOAN APPLICATIONS

29. In addition to applying for PPP loans, Respondent applied for EIDL relief for Gore & Kuperman on two instances.

30. In an initial EIDL application he submitted on April 7, 2020, Respondent claimed Gore & Kuperman had five (5) employees and annual revenue of $1,500,000.

31. Gore & Kuperman's initial EIDL application was approved.

32. In a second EIDL application he submitted on May 5, 2020, Respondent claimed Gore & Kuperman had eight (8) employees and revenue of $4,000,000.

33. Gore & Kuperman's second EIDL application was denied.

## CAN DO VENTURES' PPP LOAN APPLICATION

34. On January 28, 2021, Respondent applied for a PPP loan for Can Do Ventures.

35. In the PPP loan application he submitted, Respondent claimed Can Do Ventures had six (6) employees in 2020 and payroll sufficient to support a PPP loan of $101,182.

36. On February 8, 2021, Can Do Ventures' PPP loan application was approved.

37. On February 21, 2023, Respondent applied for forgiveness of the entire PPP loan amount of $101,182.

38. On May 31, 2023, Respondent received a notice that the SBA had denied Can Do Ventures' PPP forgiveness application because, among other things, Can Do Ventures had failed to submit filed tax returns, tax transcripts, and payroll documentation in support of its application.

39. On June 5, 2023, Respondent appealed the SBA's denial of PPP forgiveness to the SBA's Office of Hearing and Appeals.

40. While the denial of PPP forgiveness was on appeal, Respondent submitted to the SBA a tax return transcript that reported *no* payroll expenses for Can Do Ventures for the 2020 tax year.

## CAN DO VENTURES' EIDL LOAN APPLICATION

41. On January 28, 2021, Respondent applied for EIDL relief for Can Do Ventures.

42. In the EIDL application, Respondent claimed Can Do Ventures had eight (8) employees and annual revenue of $406,000.

43. Can Do Ventures' EIDL application was denied.

## INVESTIGATION OF THE PPP AND EIDL APPLICATIONS

44. The United States Attorney's Office for the Eastern District of Virginia has an investigation into whether Respondent violated the False Claims Act by making false statements and submitting false records in Gore & Kuperman's and Can Do Ventures' PPP loan applications, PPP forgiveness applications, and EIDL applications.

45. In particular, the investigation concerns whether Respondent made false statements concerning the number of employees, payroll expenses, or revenue in Gore & Kuperman's and Can Do Ventures' PPP loan applications, PPP forgiveness applications, and EIDL applications.

## THE CID

46. In connection with this investigation, the United States Attorney for the Eastern District of Virginia, under her authority as the designee for the Attorney General of the Department of Justice, issued CID No. 2023-35 to Respondent.  *See* Ex. 1 (CID No. 2023-35).

47. The CID states, in relevant part, that it was issued pursuant "to the False Claims Act, 31 U.S.C. §§ 3729-33. . . in the course of an investigation to determine whether there is or has

been a violation of the False Claims Act." [3]  Ex. 1 at 1.  The CID further states that the investigation "concerns loans and applications for loans issued through the U.S. Small Business Administration's Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) program to Gore & Kuperman, PLLC and Can Do Ventures, LLC."  *Id.*

48. The CID contains five document requests and a request for sworn oral testimony.

49. The document requests seek Respondent's communications that discuss the following topics: (a) the PPP loan program or the EIDL program, (b) Gore & Kuperman's PPP applications, (c) Gore & Kuperman's EIDL applications, (d) Can Do Ventures' PPP application, and (e) Can Do Ventures' EIDL application.  None of the document requests seek any communications that are attorney-client privileged or attorney work-product.

50. The CID also contains a sworn certificate that Respondent must submit for responses to the document requests.  *See* Ex. 1 at 4.  The sworn certificate requires Respondent to certify that all documentary material required by the CID and in Respondent's possession, custody, or control has been produced.

51. The CID seeks the production of the requested documents "no later than twenty (20) days" from the date Respondent received the CID.  Ex. 1 at 2.  The CID also requires Respondent

---

[3] The CID also noted that the investigation seeks to determine whether there has been a violation of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a(g).  FIRREA authorizes the Attorney General, and the U.S. Attorney by delegation, to issue administrative subpoenas for conducting a civil investigation.  *Id.*  FIRREA allows the United States to pursue civil penalties for any fraud involving or affecting certain types of financial institutions and the Small Business Administration in connection with PPP loans.  *Id.* § 1833a(c); 15 U.S.C. § 645(a).

to provide sworn oral testimony forty (40) days from the date Respondent received the CID or at any other date agreed upon by Respondent and the United States. *See id.*

52. On December 29, 2023, the United States served an executed copy of the CID by certified mail, return receipt requested, addressed to Respondent at the address of his principal office or place of business on file with the Virginia State Corporation Commission: 10521 Judicial Drive, Suite 204, Fairfax, Virginia 22030.[4] The United States received a receipt of mailing. *See* Ex. 2 (certified receipt).

## RESPONDENT'S NONCOMPLIANCE

53. Respondent has not responded to any of the document requests in the CID. *See* Decl. ¶ 9.

54. Despite the United States' attempts to schedule testimony, Respondent has failed to provide any dates for the testimony required by the CID. *See* Decl. ¶ 10.

55. Respondent's failure to comply with the CID has impeded the United States' ongoing investigation of whether Respondent violated the False Claims Act by making false statements in Gore & Kuperman's and Can Do Ventures' PPP loan applications, PPP forgiveness applications, and EIDL loan applications. *See* Decl. ¶ 11.

WHEREFORE the United States of America respectfully asks that this Court:

　　A.　　Enter an order directing the Respondent to show cause in writing, if any cause exists, why he should not comply with and obey CID No. 2023-35 and every requirement thereof;

　　B.　　Enter an order directing the Respondent to fully obey the CID described above and every requirement thereof, including (i) ordering the Respondent to produce all responsive

---

[4] Respondent's principal office or place of business is Gore & Kuperman, PLLC. The address identified above is the address on file with the Virginia State Corporation Commission as Gore & Kuperman, PLLC's principal office location.

documents or certify in writing that no responsive documents exist and to submit the required sworn certificate of compliance within fourteen (14) days of the Show Cause hearing and (ii) ordering the Respondent to appear and testify pursuant to the CID within twenty-eight (28) days of producing the materials and sworn certificate of compliance demanded by the CID; and

    C.    Grant such other and further relief as the Court deems to be proper and just.

Dated: June 13, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By:    /s/
Tanya Kapoor
William Hochul III
Assistant U.S. Attorneys
*Counsel for the United States of America*
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3911
Fax:    (703) 299-2584
E-mail: Tanya.Kapoor@usdoj.gov
         William.Hochul2@usdoj.gov